UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SARAH STACEY,

                Plaintiff,

        V.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**REPORT AND RECOMMENDATION**

09-CV-0638
(DNH/VEB)

---

## I. INTRODUCTION

In October of 2005, Plaintiff Sarah Stacey filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since September of 2002 due to asthma and back problems. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorney, Peter M. Margolius, Esq., commenced this action on June 3, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On February 14, 2011, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 12).

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff applied for DIB and SSI on October 26, 2005, alleging disability beginning on September 28, 2002. (T at 63-67).[1]  The applications were denied initially. (T at 48-52).  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  (T at 7, 47).  A hearing was held on March 11, 2008, in Albany, New York before ALJ Robin Arzt. (T at 218-37).  Plaintiff appeared with Janice Cammarato, a representative from Attorney Margolius's office, and testified. (T at 218).

On March 26, 2008, the ALJ issued a decision denying Plaintiff's applications. (T at 8-20).  The ALJ's decision became the Commissioner's final decision on April 13, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 2-4).

Plaintiff, through counsel, commenced this action on June 3, 2009. (Docket No. 1). The Commissioner interposed an Answer on August 18, 2009. (Docket No. 8).  Plaintiff filed a supporting Brief on October 1, 2009. (Docket No. 10).  The Commissioner filed a Brief in opposition on November 13, 2009. (Docket No. 11).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and this case be dismissed.

---

[1] Citations to "T" refer to the Administrative Transcript.  (Docket No. 9).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

## III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

   **1.   Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements under the Act through March 31, 2006. (T at 13).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 28, 2002, the alleged onset date. (T at 13). The ALJ determined that Plaintiff had the following impairments considered "severe" under the Act: a lower back disorder and asthma. (T at 13).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 13).  The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a wide range of light work. (T at 13-14).

The ALJ determined that Plaintiff could perform her past relevant work as a cashier-checker. (T at 18).  In the alternative, the ALJ concluded that, even if Plaintiff could not perform her past relevant work, considering her age (25 years old as of the alleged onset

date), education (ninth grade), past work history (unskilled) and RFC (light work), there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 18). Further, the ALJ found that even if Plaintiff was limited to sedentary work, she would be considered not disabled under the framework of Medical-Vocational Guidelines, Rule 201.25. (T at 19).

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined under the Social Security Act, since the alleged onset date. (T at 19). As noted above, the ALJ's decision became the Commissioner's final decision on April 13, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 2-4).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers four (4) arguments. First, Plaintiff asserts that the ALJ erred in failing to give sufficient weight to the assessment of her treating source. Second, Plaintiff contends that the ALJ failed to adequately address the opinion of the orthopedic consulting examiner, Amelita Balagtas, M.D. Third, Plaintiff challenges the ALJ's consideration of certain lumbar MRI reports. Lastly, Plaintiff argues that the ALJ's RFC finding is not supported by substantial medical evidence. This Court will address each argument in turn.

#### a. Plaintiff's Treating Provider

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362

F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford to the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, Plaintiff's primary treating source was Marianne Powers, a nurse practitioner. In June of 2007, Ms. Powers completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form. Ms. Powers opined that Plaintiff could occasionally lift/carry less than 10 pounds, frequently lift/carry less than 10 pounds, and stand/walk for at least 2 hours in an 8-hour workday. (T at 175). She assessed that Plaintiff could sit for less than 6 hours in an 8-hour workday and was limited with regard to her ability to push/pull in her lower extremities. (T at 176). Ms. Powers also noted postural, manipulative, and environmental limitations. (T at 176-78).

The ALJ assigned "little weight" to Ms. Powers's assessment. (T at 17). The ALJ

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

noted that Ms. Powers is not an acceptable "medical source" under the Social Security Regulations and found that her report was "not supported by her May 2007- January 2008 clinical notes from the Jefferson Heights Family Care Center." (T at 17).

Plaintiff argues that the ALJ should have given more weight to Ms. Powers' assessment. In particular, Plaintiff asserts that Ms. Powers' opinion is supported by clinical notes documenting lower back pain and objective medical evidence in the form of two lumbar MRI reports of July 23, 2003 and July 21, 2006. (T at 217, 182-83).

This Court finds that the ALJ's assessment of Ms. Powers's opinion was supported by substantial evidence and in accord with applicable law. Not all health care providers are "treating sources" under the Social Security Act. A treating source is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." 20 C.F.R. § 404.1502. There are five categories of "acceptable medical sources." 20 C.F.R. § 404.1513 (a). A nurse practitioner is not included in any of these categories. Rather, a nurse practitioner is included among "other sources," whose opinion may be considered as to the severity of the claimant's impairment and ability to work. 20 C.F.R. § 416.913(d)(1).

Accordingly, because the Regulations do not classify nurse practitioners as an "acceptable medical source," the ALJ was not bound to give Ms. Powers' opinion controlling weight. See Velasquez v. Barnhart, No. 03 Civ. 6448, 2004 WL 1752825, at *3 n. 49 (S.D.N.Y. Aug. 4, 2004)("The Regulations allow a lower level of consideration to be given to these 'other sources,' but 'under no circumstances can the regulations be read to require the ALJ to give controlling weight' to such sources.").

This Court is mindful that while an "other source" opinion is not treated with the same deference as a treating physician's opinion, the assessment is still entitled to some weight, especially when there is a long-standing treatment relationship with the claimant. Pogozelski v. Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant"); see also Mejia v. Barnhart, 261 F.Supp.2d 142, 148 (E.D.N.Y.2003 (finding that the ALJ should have afforded a treating therapist's opinions at least a little weight where the therapist "saw plaintiff on a regular basis and [ ] offered a diagnosis consistent with that of the treating psychiatrist"); White v. Comm'r, 302 F.Supp.2d 170, 174-76 (W.D.N.Y.2004) (reversing where the ALJ failed to give appropriate weight to the plaintiff's social worker, who had a regular treatment relationship with the plaintiff and whose diagnosis was consistent with the treating psychiatrist); Rivera v. Bowen, 665 F.Supp. 201, 206 (S.D.N.Y.1987) (finding that the opinions of chiropractors and physical therapists must be accorded at least some weight).

In this particular case, this Court finds that the ALJ afforded an appropriate weight to Ms. Powers's assessment. The Second Circuit has held that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir.1995). Here, the ALJ reasonably concluded that Ms. Powers's assessment of significant limitation was contradicted by her clinical notes, which mainly documented mild complaints and limitations. Although Plaintiff correctly points out that the notes chronicle frequent back pain complaints (T at 184, 185, 203-04, 206-07, 216), the notes also indicated that the pain

was well-controlled and clinical examination results were grossly normal. (T at 184, 206). In October of 2007, Ms. Powers described Plaintiff as a "well adult" and indicated that Plaintiff could "start exercise (walking)."  Even if Ms. Powers was a "treating source," these contradictions would have supplied the ALJ with a basis for assigning little weight to her opinion. See Kennedy v. Astrue, 343 Fed.Appx. 719, 2009 WL 2634667, at *2 (2d Cir. Aug. 28, 2009)(finding that ALJ properly applied treating physician's rule where "the extreme impairment reflected on [physician's assessment] form is not corroborated by the contemporaneous treatment notes").

Further, the MRI reports do not provide a basis for overturning the ALJ's assessment.  The MRI report from July of 2006 indicated nonspecific straightening of the cervical curve, with "no significant degenerative changes," "no significant cervical canal stenosis," and the cervical spinal cord appeared to be "grossly unremarkable." (T at 180). An MRI of the lumbar spine conducted at the same time showed disc degeneration at L4/5, with several "mild" findings and "[n]o significant spinal canal or left foraminal stenosis." (T at 181).  Disc degeneration and diffuse disc bulging was also noted at L5/S1, along with a "[p]rominent focal annular tear" and degenerative "hypertrophic facet joint changes." (T at 182).  The overall impressions were generally "mild," with "[n]o significant spinal canal stenosis." (T at 182).

Additional support for the ALJ's decision to discount Ms. Powers's assessment is found in the report of Dr. Amelita Balagtas, a consultative examiner.  Dr. Balagtas found that Plaintiff had normal motor strength, grip strength, reflexes, and gait. (T at 161). Although Dr. Balagtas noted "moderate" limitations with regard to bending, lifting, and prolonged sitting/standing/walking, she found full range of motion at both hips, knees, and

ankles and no muscle atrophy or sensory abnormality in the lower extremities. (T at 162). Moreover, Plaintiff's physical therapist opined that Plaintiff had no limitations with regard to standing, sitting, or walking. (T at 136). The therapist also indicated that Plaintiff could occasionally lift 20-40 pounds. (T at 135). This evidence contradicted Ms. Powers' assessment of significant limitations.

Accordingly, this Court finds no reversible error with regard to the ALJ's decision to afford little weight to the assessment of Ms. Powers.

### b. Consultative Examiner's Report

As noted above, Dr. Balagtas, the orthopedic consultative examiner, opined in December of 2005 that Plaintiff appeared to have "moderate limitations in activities that require bending, lifting, prolonged sitting, and prolonged standing and walking." (T at 162). The ALJ referenced this finding, but did not specifically state what weight, if any, was being assigned to it. Plaintiff contends that this failure to assign specific weight to Dr. Balagtas's assessment constitutes reversible error. In addition, Plaintiff argues that Dr. Balagtas's findings support her claim of a disabling impairment.

This Court finds no reversible error. Although the ALJ should have stated the weight being assigned to the consultative examiner's assessment, the ALJ clearly considered the assessment and the reasoning underlying the ALJ's decision can be readily discerned.

However, in no way should this finding be interpreted as understating the importance of the ALJ's obligation to discuss critical pieces of evidence (and the consultative examiner's assessment certainly falls within that category) and expressly state what weight, if any, was assigned to that evidence. Meaningful judicial review may be frustrated when the ALJ does not explicitly set forth the weight assigned to key evidence and remand will

frequently be the remedy in such cases. In this particular case, this Court finds that a very limited exception to the general rule applies because, as noted above, it is clear the ALJ considered the consultative examiner's assessment and ample support exists in the record to support the ALJ's decision.

First, the ALJ did find some limitations with regard to Plaintiff's ability to lift, carry, walk, stand, and bend, which was generally consistent with Dr. Balagtas's assessment of moderate limitations in this areas. Specifically, the ALJ concluded that Plaintiff could lift/carry up to 20 pounds, frequently lift/carry 10 pounds, and walk/stand for up to 6 hours in an 8-hour workday. (T at 13). The ALJ found that Plaintiff was limited to only occasional bending and stooping. (T at 13-14).

Second, upon review of the record, the ALJ concluded that, during the period between November of 2004 and January of 2006, Plaintiff had "several flare-ups of back pain that caused moderate functional limits but no neurological abnormalities." (T at 18). Dr. Balagtas's examination occurred in December 2005. The ALJ referenced Dr. Balagtas's clinical findings, which showed "a lack of neurological involvement in [Plaintiff's] lower back disorder." (T at 17). It can be reasonably inferred from the decision that the ALJ found that the moderate functional limitations assessed by the consultative examiner were caused by a periodic "flare-up," as opposed to limitations of a permanent nature. See SSR 82-52 ("[T]he disabling impairment(s) preventing an individual from engaging in SGA (or any gainful activity) must be expected to result in death, or must have lasted (or be expected to last) for at least 12 continuous months from the date of onset."). The clinical notes support the ALJ's conclusion, as they document periodic bouts of increased symptoms during the period between November 2004 and January 2006, but otherwise

show mild symptoms and no neurological involvement. (T at 147-159).

Accordingly, this Court finds no reversible error with regard to the ALJ's evaluation of the consultative examiner's assessment. Indeed, the ALJ's RFC determination is largely consistent with Dr. Balagatas's findings, particularly when consideration is given to the ALJ's conclusion regarding Plaintiff's periodic flare-ups.

### c. Consideration of MRI Results

Plaintiff points to 2003 and 2006 MRI findings and argues that these findings undermine the ALJ's conclusion concerning her RFC. The ALJ discussed the findings from both MRIs in detail. (T at 15). The ALJ also referenced and rejected Plaintiff's argument that the MRI results establish a disabling condition. (T at 15-16). This Court finds that the ALJ's decision was supported by substantial evidence. As noted above, clinical findings were generally mild; Plaintiff's physical therapist indicated that Plaintiff had no limitations with regard to standing, sitting, or walking; and the consultative examiner found only "moderate" limitations (during a period of time when Plaintiff appeared to be experiencing a flare-up of symptoms).

Further support for the ALJ's decision is found in the assessment of the non-examining State Agency review consultant, who opined that Plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk/sit for 6 hours in an 8-hour workday; and push/pull without limitation. (T at 165).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2);

see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Accordingly, this Court finds that the ALJ's consideration of the MRI results was supported by substantial evidence and in accord with applicable law.

### d.     RFC Determination

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ concluded that Plaintiff retained the RFC to occasionally lift/carry up to 20 pounds; frequently lift/carry 10 pounds; walk and stand up to 6 hours in an 8-hour day; push/pull light weight objects; and occasionally bend and stoop. (T at 13-14).  The ALJ found that Plaintiff's RFC limited her to work performed in a reasonably clean

air environment that was reasonably free from temperature and humidity extremes. (T at 14). The ALJ assessed Plaintiff's overall RFC as being consistent with an ability to perform a wide range of light work, as defined under the Regulations.

Plaintiff challenges the ALJ's RFC assessment, advancing the same arguments addressed above (*i.e.* the ALJ should have given more weight to Ms. Powers' assessment, should have evaluated the MRI results differently, and did not adequately address Dr. Balgatas's findings). For the reasons stated above, this Court finds Plaintiff's argument unavailing. The ALJ's RFC determination is supported by the clinical notes and examination results, the assessment of the non-examining State Agency review consultant, and the findings of Plaintiff's physical therapist. Lastly, additional support for the ALJ's RFC assessment was also provided by Plaintiff's testimony concerning her daily activities. Plaintiff is able to cook, shop, and clean with mild to moderate limitations. (T at 229-30). She had not used a cane to walk since the alleged onset date and had not attended physical therapy for two years as of the date of the hearing. (T at 230).

In light of the foregoing, this Court finds no reversible error with regard to the ALJ's RFC determination.

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the Commissioner's decision in this case, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating sources and consultative examiner, and afforded Plaintiff's subjective


claims of pain and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error and because substantial evidence supports the Commissioner's decision, the Court recommends that the Commissioner be GRANTED judgment on the pleadings.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   May 20, 2011
         Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

May 20, 2011

[signature]

Victor E. Bianchini
United States Magistrate Judge